IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

DEC 20 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

EVELYN SAWYER as Administratrix
of the ESTATE OF DOUGLAS POOLE,
    Plaintiff,

    v.

KENNETH STOLLE, et al.,
    Defendants.

CIVIL No. 2:11cv446

## OPINION AND ORDER

This is a civil rights action to redress alleged violations of the Eighth and Fourteenth Amendments. Plaintiff Evelyn Sawyer, as Administratrix of the Estate of Douglas Poole ("Plaintiff") alleges that, while serving a ten day sentence in the Virginia Beach Jail for driving on a suspended license, her brother Douglas Poole was denied access to competent medical treatment, and that such wrongful denial caused his untimely death. (Pl.'s Compl. 2 ¶ 1.; Pl.'s Omnibus Reply 1.) She now seeks relief from Kenneth Stolle, the Sheriff of Virginia Beach, Virginia ("Defendant Stolle"), Conmed, Inc. ("Defendant Conmed"), Howard Haft, M.D., Tyrane Herriott, R.N., and Abdul Jamaludeen, M.D. (the "Provider Defendants"), Deputy Harrell, Deputy Falletta, and other individuals associated with the Virginia Beach Sheriff's Office and Conmed, Inc..

This matter is presently before the Court on four separate motions to dismiss Plaintiff's Amended Complaint filed by Defendants in this case: (i) the Motion to Dismiss filed by Defendant Stolle on November 21, 2011; (ii) the Motion to Dismiss filed by the Provider Defendants on September 13, 2011, renewed on October 19, 2011; (iii) the Motion to Dismiss filed by Defendant Conmed on September 29, 2011, renewed on October 19, 2011; and (iv) the

Motion to Dismiss filed by Defendants Harrell and Falletta on November 29, 2011. For the reasons stated herein, the Motions to Dismiss filed by Defendants Stolle, Haft, Harrell, and Falletta are hereby **GRANTED**. The Court does not accept pendent jurisdiction over Plaintiff's state negligence claims.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

The Virginia Beach Jail in Virginia Beach, Virginia, is a 1,100-inmate jail that contracts with for-profit institutions to provide medical care to its inmate population. For twenty-five years, the Virginia Beach Jail contracted with Correctional Medical Services ("CMS") to provide medical services to its inmate population. However, after CMS came under scrutiny in Virginia for failing to provide care consistent with accepted medical standards to inmates in correctional facilities in Virginia Beach and elsewhere in Virginia, the Virginia Beach Jail declined to renew its contract with CMS in September 2010.[2] (Pl.'s Am. Compl. ¶¶ 19, 21-25, 27.) On October 1, 2010, Defendant Conmed took over inmate medical services at the Virginia Beach Jail. However, Conmed hired all or most of the physicians and nurses previously employed by CMS at the Virginia Beach Jail. (Id. at ¶ 28.)

---

[1] The facts recited here are drawn from the allegations set forth in Plaintiff's First Amended Complaint. The facts are assumed true only for the purpose of deciding the motions currently before the Court. The facts recited here are not factual findings for any purpose other than for the consideration of the instant motions.

[2] In her Amended Complaint, Plaintiff alleges the following. In 1994, the Norfolk Virginia City Jail (a neighboring detention facility) terminated its contract with CMS for CMS' failure to contain the threat of infectious diseases including, but not limited to, tuberculosis. In the summer of 2000, the state of Virginia assessed more than $900,000.00 in penalties against CMS for incidents ranging from failure to provide inmates with timely referrals to physicians to physicians failing to assess medical conditions within forty-eight hours of inmates entering the prison. In July 2001, the Virginia Beach Jail changed its contract terms with CMS from a yearly agreement to a conditional month-to-month arrangement following a high profile incident in which a female inmate died in her cell from liver cancer, Hepatitis C, and cirrhosis, which had caused her to retain eighty pounds of excess water in her abdomen. The Virginia Beach Sheriff's Offices, the Federal Bureau of Investigations, and Amnesty International launched an investigation into this incident. Nonetheless, the Virginia Beach Jail renewed its contract with CMS in the summer of 2002, and continued to contract with CMS until September 2010. (Pl.'s Am. Compl. ¶¶ 21-25, 27.)

On January 1, 2010, Defendant Stolle took office as the Sheriff of Virginia Beach. Plaintiff alleges that, by virtue of his position as Sheriff, Defendant Stolle knew or should have known of the long history of inadequate and sub-standard medical care provided by CMS to inmates in the Virginia Beach Jail. Plaintiff further alleges that Defendant Stolle was aware of the Jail's history of ignoring the serious medical conditions of its inmates and its failure to provide inmates with needed prescription medications. (Id. at ¶ 26.) Plaintiff contends that Defendants Conmed and Haft were also aware of these prior failures. (Id. at ¶ 27.) Additionally, Plaintiff alleges that, despite the awareness of Defendants Stolle, Conmed, and Haft, no additional policies or procedures were implemented and no additional training was provided to the previously employed CMS physicians and nurses or the already employed Virginia Beach Jail prison guards in order to improve the management of inmate healthcare. (Id. at 29.)

According to the allegations recited in Plaintiff's Amended Complaint, on October 29, 2010, Douglas Poole was committed to the Virginia Beach Jail to serve a ten day sentence for driving under a suspended license. Upon his initial presentation, he reported to the jail infirmary for a medical evaluation and was examined by Dr. Jamaludeen, the sole attending physician at the Virginia Beach Jail. Mr. Poole informed the medical staff, including Dr. Jamaludeen and Nurse Tyrane Herriot, that he suffered from diabetes and hypertension and that he required certain prescription medications. It was noted in the jail medical chart that Mr. Poole was to receive Insulin for his diabetes and Lisinopril to control his hypertension, and that his blood pressure was to be monitored for his initial three days in custody. Upon his incarceration, Mr. Poole was cleared by Conmed medical staff for participation in the "Self Medication Program," and signed a contract providing that he was permitted to keep his medications on his person. Plaintiff alleges that, despite the medications order in Mr. Poole's chart, no member of

Conmed's staff ever dispensed the prescribed medications to Mr. Poole or followed up to ensure that Mr. Poole's blood pressure was being appropriately monitored or that Mr. Poole had taken his medications. (Id. at ¶¶ 32-34.)

On October 29, 2010, neither the medical staff nor the jail staff dispensed Lisinopril to Mr. Poole. On October 30, the staff again failed to dispense Lisinopril to Mr. Poole. On that day, his blood pressure was recorded in the jail medical chart as 162/102. On October 31, the staff again failed to dispense Lisinopril to Mr. Poole, and his blood pressure was listed on his chart as being 154/96. (Id. at ¶¶ 35-37.) On November 1, 2010, Mr. Poole complained to the Dr. Jamaludeen that he had not received Lisinopril or Insulin from the jail staff, at which time Dr. Jamaludeen again prescribed both medications to Mr. Poole. His blood pressure was recorded as 168/105. (Id. at ¶ 38.) Thereafter, Mr. Poole received Insulin, but did not receive Lisinopril.

On the afternoon of November 3, 2010, Mr. Poole presented to the Jail infirmary in distress and reported to Dr. Jamaludeen and other medical personnel that he was experiencing severe pain in his eye. He was dispensed Tylenol and returned to his cell. None of his vital signs were checked or monitored during this visit to the infirmary. (Id. at ¶ 44.) Later that afternoon, Mr. Poole returned to the infirmary again complaining of severe eye pain. He was again dispensed Tylenol and returned to his cell without any monitoring of his vital signs. (Id. at ¶ 45.) Upon returning to his cell block, Mr. Poole became unsteady on his feet and began to perspire heavily. He reported to the prison guards on staff that he could not see. The guards contacted the medical staff, but after being informed that Mr. Poole should remain in his cell, they took no further action. (Id. at ¶ 47.)

Shortly thereafter, Mr. Poole collapsed in his cell and struck his head on a table. (Id. at ¶ 48.) After other inmates got the attention of the prison guards, the guards transported him to the infirmary by wheelchair. (Id.) Upon Mr. Poole's arrival at the infirmary, a member of the medical staff instructed that he was to be returned to the cell block. None of his vital signs were monitored. (Id. at ¶ 49.) On his return to the cell block, Mr. Poole repeatedly informed the guards that he could not see or walk. (Id. at ¶ 50.) The guards and prison staff apparently believed that Mr. Poole was malingering and took no further action to address his complaints. (Id.) Less than thirty minutes later, Mr. Poole indicated to his cell mates that he felt nauseated, and his cell mates observed his eyes to be very red. At this time, Mr. Poole became unconscious and remained so for fifteen minutes. (Id. at 54.)

Mr. Poole was again transported to the infirmary, where he was vomiting and appeared drowsy and lethargic. Following a reading of his blood pressure at 197/90, jail personnel immediately called 911. (Id. at 17.) At approximately 4:45 p.m., Mr. Poole was transported to the Emergency Room. Upon his arrival at the hospital, Mr. Poole was observed to be disoriented and distressed, and his blood pressure was measured at 236/68. A brain scan revealed the presences of a massive hemorrhage in the right posterior cerebral hemisphere. (Id. at ¶¶ 56-58.) Mr. Poole's condition continued to deteriorate, and on November 4, 2010, he was declared to be clinically brain dead. (Id. at ¶ 60.) On November 8, 2010, an autopsy revealed that Mr. Poole died of a brain hemorrhage, which was the result of hypertension. (Id. at ¶ 61.)

## II.   JURISDICTION AND PROCEDURE

On August 11, 2011, Plaintiff filed a Complaint against Defendants Conmed and Stolle, the Provider Defendants, and John and Jane Does. Thereafter, Defendants Stolle and Conmed

and the Provider Defendants each filed a Motion to Dismiss.  In response to these Motions to Dismiss, Plaintiff filed an Amended Complaint, in which she added as Defendants Corporal Jennings, Deputy Harrell, and Deputy Gunderson of the Virginia Beach Sheriff's Office, and John and Jane Doe Prison Guards of the Virginia Beach Sheriff's Office.  Count One of Plaintiff's Amended Complaint alleges Wrongful Death against all Defendants, in violation of 42 U.S.C. § 1983 and the Eighth Amendment to the United States Constitution.  Count Two alleges Wrongful Death and Medical Negligence under Virginia state law against the Provider Defendants.

This Court has jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. § 1331 and 1343.  However, for reasons explained more fully in the analysis which follows, the Court declines to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the pendent state claims asserted in Plaintiff's First Amended Complaint.

In general, a district court may exercise supplemental jurisdiction over pendent state law claims when it has jurisdiction over related federal claims that form part of the "same case or controversy."  United Mine Workers v. Gibbs, 383 U.S. 715, 725-728 (1966).  Indeed, this doctrine is so well-established that it has been codified at 28 U.S.C. § 1367, which provides, in relevant part,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  However, pendent jurisdiction under 28 U.S.C. § 1367 is a doctrine of discretion, not of plaintiff's right.  City of Chicago v. Int'l College of Surgeons, 522 U.S. 156,

172 (U.S. 1997) (citing Gibbs, 383 U.S. at 726). District courts may decline to exercise jurisdiction over pendent claims for a number of valid reasons. City of Chicago, 522 U.S. at 172. "[T]he doctrine of pendent jurisdiction is thus a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). Accordingly, the Supreme Court has held that district courts should deal with cases involving pendent claims "in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." Id. at 357.

Moreover, 28 U.S.C. § 1367 expressly provides that a district court may properly decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367. Here, trying Plaintiff's negligence claims alongside her § 1983 claims has the potential to substantially confuse the jury. The standards of review applicable to each set of claims—deliberate indifference on the one hand, and negligence on the other—is apt to confuse any jury, no matter how clearly instructions are given. It is for this precise reason that other courts have found that negligence theories are "inconsistent and incompatible" with civil rights claims for the purposes of pendent jurisdiction. Kedra v. City of Philadelphia, 454 F. Supp. 652, 682 (D.C. Pa. 1978); see also King v. City of Detroit, No. 10-12133, 2010 WL 2813349 (E.D. Mich. July 14, 2010) (compelling reasons supported the district court's decision to decline to exercise supplemental jurisdiction over plaintiff's negligence claims even though they arose out of the same nucleus of operative fact as plaintiff's § 1983

claims on the ground that exercising supplemental jurisdiction might complicate the trial, make more complex the jury instructions, or result in confusion).

Accordingly, having determined that the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—tip in favor of allowing a state court to decide Plaintiff's state-law claims, Plaintiff's pendent state law claims are hereby **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1367.

## III.    LEGAL STANDARD APPLICABLE TO PLAINTIFF'S CONSTITUTIONAL CLAIMS

Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a plaintiff need not plead "detailed factual allegations," she must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to allow such an inference. Id.

Where a plaintiff fails to state a claim upon which relief can be granted, or otherwise fails to meet the requirements of Rule 8(a)(2), Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action. The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Neitzke v. Williams, 409 U.S. 319, 326-27 (1989). The Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should be granted only in "very limited circumstances." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989). Where, as here, a Rule 12(b)(6) motion tests the sufficiency of a civil

rights complaint, the court must be "especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts as alleged.*" Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999) (internal citations omitted) (emphasis in original). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts a plaintiff's factual allegations as true, but is "not bound to accept as true legal conclusions couched as allegations." Iqbal, 129 S. Ct. at 1950 (citing Bell Atlantic, 550 U.S. at 555).

## IV. ANALYSIS

Plaintiff alleges that Defendants, with knowledge of Mr. Poole's medical complaints and condition, and/or with deliberate indifference to such medical complaints and condition, acted or failed to act in a way as to deprive Mr. Poole of necessary medical care, thus causing his untimely death. (Pl.'s Am. Compl. ¶ 64.) In Count One of her Complaint, Plaintiff contends that these acts and omissions violated rights secured to Mr. Poole under the Eighth and Fourteenth Amendments. (Id.) In reviewing the collective Defendants' motions to dismiss, it is logical to consider separately the § 1983 liability of Defendants Stolle, Falletta, and Harrell, as jail officials, and that of the remaining defendants, as medical providers. See Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

### 1. Plaintiff's Claims Against The Provider Defendants In Their Individual Capacities

To show that a health care provider has personally violated a prison inmate's Eighth Amendment rights, a plaintiff must prove more than mere negligence or malpractice, and must

show that the health care provider was "deliberately indifferent' to the inmate's "serious medical needs." Miltier, 896 F.2d at 852; Estelle v. Gamble, 429 U.S. 97, 106 (1976). To satisfy this burden, a plaintiff must show that "the treatment [was] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Deliberate indifference may be shown by either actual intent or reckless disregard. Id. "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52.

The facts pled in Plaintiff's Amended Complaint mirror those recited in Miltier v. Beorn, 896 F.2d 848. Like this case, Miltier involved a § 1983 claim against supervisory officials and medical personnel arising out of an inmate's alleged wrongful death. After the jail physician diagnosed the inmate with heart disease, the prisoner consulted with prison physicians on numerous occasions and it was ultimately recommended that she be transferred to a hospital cardiology wing. However, the treating physicians never followed up, and the inmate was never scheduled for a consultation or referred for transfer. Following the aborted referral, the inmate continued to complain of chest pain, prompting another jail physician to request an evaluation by a Virginia Department of Corrections physician. However, no evaluation was ever performed, and despite the inmate's continued complaints of chest pain and dizziness, she was moved into the general prison population and not seen for nearly four months. After complaining of chest pain and dizziness three times in one week, the inmate was sent back to her dormitory and placed under observation. Within hours, she was found dead, apparently as a result of a massive heart attack. Id. at 850-51.

On summary judgment, the district court found for the defendant physicians after finding that, although they may have been negligent, their conduct did not amount to deliberate indifference. Id. at 852. On appeal, the Fourth Circuit reversed, holding as follows:

> Taking the evidence of [the prisoner's] maltreatment in the light most favorable to [the plaintiff], it is certainly an eminently reasonable, if not inescapable inference that . . . her physicians' actions "disregard[ed] a substantial risk of danger that either [was] known to [them] or would be apparent to a reasonable person in [their] position."

Id. at 852 (citing Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985)).

The Court based its holding on its finding that none of the treating physicians made any effort to follow up on their treatment recommendations even though they knew of the prisoner's continued complaints and appreciated the seriousness of her condition. Miltier, 896 F.2d at 853. As the Court stated, this failure to follow up "presents a triable jury question on the issue of [the physician's] deliberate indifference to [the prisoner's] medical needs." Id. (citing Ancata Prison Health Serv., Inc., 769 F.2d 700, 704 (11th Cir. 1985)).

In the instant case, both Defendant Jamaludeen and Defendant Herriot personally saw Mr. Poole in the course of his medical care during his brief period of incarceration prior to his death. Moreover, viewing the facts in the light most favorable to Plaintiff, as we must, we find that, as the sole attending physician at the Jail, Defendant Jamaludeen was responsible for overseeing prisoner medical treatment and for ensuring that the care provided was consistent with accepted standards of care in Virginia. As in Miltier, Plaintiff's Complaint against these Provider Defendants centers largely on her contention that neither provider ever followed up to ensure that Mr. Poole was receiving adequate care. Specifically, Plaintiff alleges that, after being informed that Mr. Poole suffered from both diabetes and hypertension, Defendants Jamaludeen and Herriot never checked whether Mr. Poole was receiving his prescribed medications or that

his blood pressure being daily monitored, as called for in his intake medical chart. (Pl.'s Am. Compl. ¶¶ 32, 34-37, 40.)

Moreover, Plaintiff states that Mr. Poole informed Defendant Jamaludeen that he had not received his Lisinopril nor his Insulin for a period of at least three days, which prompted Defendant Jamaludeen to write a second prescription for these medications. (Pl.'s Am. Compl. ¶ 38.) However, despite knowing that Mr. Poole had not received his medications in for an extended period of time, it appears that Defendant Jamaludeen did not monitor or record Mr. Poole's blood pressure at the time Mr. Poole reported the issue. Additionally, despite Defendant Jamaludeen's knowledge that his staff had neglected to provide Mr. Poole with his medications and to monitor his blood pressure, and his presumed awareness of how critical it was that Mr. Poole receive his medications, Defendant Jamaludeen failed to follow up in any regard. (Id. at ¶ 40.)

Whether or not the Provider Defendants' failure to ensure that Mr. Poole was receiving adequate care, particularly in light of Mr. Poole's serious health concerns and his repeated attempts to bring those concerns to the attention of Conmed staff, amounts to deliberate indifference is a question of fact for a jury to decide. Miltier, 896 F.2d at 852 (on the issue of deliberate indifference, expert testimony is required to aid the jury in determining the threshold standard of medical care); see also Hughes v. Blankenship, 672 F.2d 403, 406 (4th Cir. 1982) (the question of whether the actions of police officers resulting in death were simple negligence or manifested deliberate indifference was a question of fact for the jury). Thus, as to Plaintiff's claims against Defendants Jamaludeen and Herriot in their individual capacities, the Provider Defendants' Motion to Dismiss is **DENIED**.

However, unlike with Defendants Jamaludeen and Herriot, Plaintiff has failed to plead any facts which would suggest that Defendant Haft had any personal responsibility for Mr. Poole's care. That Defendant Haft served as the Chief Medical Officer of Conmed does not render him individually liable for Mr. Poole's mismanaged care. Indeed, Plaintiff's Amended Complaint nowhere suggests that Defendant Haft provided care to Mr. Poole, was consulted in regards to Mr. Poole's care, or was even aware of Mr. Poole's presence in the Virginia Beach Jail. Having played no direct role in Mr. Poole's care, we cannot find that Defendant Haft personally exhibited deliberate indifference to Mr. Poole's serious medical needs. As such, Plaintiff has failed to state a claim upon which relief can be granted under § 1983 and, as to Defendant Haft, the Provider Defendants' Motion to Dismiss is **GRANTED**.

2. <u>Plaintiff's Claims Against The Provider Defendants For Supervisory Liability</u>

In the Fourth Circuit, "the principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." <u>Shaw v. Stroud</u>, 13 F.3d 791, 798 (4th Cir. 1994). However, it is well-established that there is no *respondeat superior* liability under § 1983. <u>Monell v. Dept. of Social Svcs.</u>, 436 U.S. 658, 691 (1978); <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984); <u>see also</u> <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."). Instead, an official can be held supervisorily liable under § 1983 only if the claimant can demonstrate that the prison officials' conduct demonstrated "deliberate indifference." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). In so cabining the scope of supervisory liability under § 1983, the Supreme Court has cautioned:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate inhumane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. at 837.

In accord with this rationale, the Fourth Circuit has promulgated a three-part test for assessing the supervisory liability of prison officials.  Under that rubric, prison officials can be held individually liable under § 1983 only upon a showing that: (i) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like plaintiff, (ii) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices" and (iii) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the Plaintiff. Shaw, 13 F.3d at 799.

Plaintiff alleges that, as individuals with supervisory authority, Defendants Jamaludeen and Haft were responsible for the promulgation and enforcement of rules, regulations, policies, and practices regarding medical care at the Virginia Beach Jail.  Plaintiff alleges that, despite this obligation, both Defendant Haft and Defendant Jamaludeen failed to institute the policies and procedures necessary to ensure that inmates were dispensed their prescribed medications and that inmates were treated according to accepted standards of medical care.  Plaintiff contends that this failure constitutes a tacit authorization of the deliberate indifference shown to the medical needs of the inmate patient population at the Virginia Beach Jail.  Finally, Plaintiff asserts that, as

supervisory officials, Defendants Haft and Jamaludeen[3] knew or should have known of the "tortured history of mismanaged inmate healthcare at the Virginia Beach Jail," and that this should have prompted them to implement certain safeguards and/or provide better training to Conmed staff. (Pl.'s Am. Compl. ¶ 27.)

The facts previously recited demonstrate that Defendant Jamaludeen knew that his subordinates had failed to provide Mr. Poole with his medications for a period of at least three days. Thus, even if Defendant Jamaludeen cannot be charged with awareness of the major deficiencies in the care provided by CMS, by whom he was previously employed, his knowledge of Conmed's failure to provide Mr. Poole with his medications and of their subsequent disregard for Mr. Poole's complaints regarding serious medical issues may be sufficient to render him liable. See Murrell v. Bennett, 615 F.2d 306; 310 (9th Cir. 1980) (the standard for supervisory liability "does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness"). A jury could find that failure to provide a patient with potentially life-sustaining medications poses a "pervasive and unreasonable risk" of harm, that Defendant Jamaludeen was aware of this risk, that his failure to follow up demonstrated such inadequate care as to show "deliberate indifference," and that this indifference was a proximate cause of Mr. Poole's death. Therefore, the Provider Defendants' Motion to Dismiss as to Defendant Jamaludeen is hereby **DENIED**.

However, Plaintiff simply has not alleged sufficient facts to show that Defendant Haft had any knowledge – constructive or actual – that his subordinates were engaged in conduct posing an unreasonable risk of constitutional injury. Although Plaintiff attempts to impose a

---

[3] Plaintiff also asserts that Dr. Jamaludeen was employed by CMS prior to his hiring by Conmed after the cancelation of the CMS contract with the Virginia Beach Jail, thus providing another grounds for asserting that Defendant Jamaludeen knew or should have known of the myriad problems which arose under CMS' care.

heightened duty on Defendant Haft due to his alleged awareness of what occurred at the Virginia Beach Jail under CMS' care, this approach must fail. Simply stated, Conmed is not CMS, and the injuries which occurred under what appears to have been the grossly deficient care provided by CMS cannot be attributed to Defendant Haft. Plaintiff has supplied no facts which suggest that, based on the twenty-eight days from the time Conmed assumed healthcare responsibilities at the Virginia Beach Jail until the date of Mr. Poole's death, Defendant Haft had any reason to know that Conmed staff members were providing sub-standard care. Without such knowledge, Defendant Haft cannot be held to have exhibited deliberate indifference to Mr. Poole's serious medical needs. As such, the Provider Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's allegations against Defendant Haft.

3. Plaintiff's Claims Against Defendant Conmed

Plaintiff alleges that Conmed's pattern of inaction qualifies as a "policy or custom" giving rise to § 1983 liability. Specifically, Plaintiff contends that Conmed failed to institute sufficient policies, procedures, and training for the proper dispensing of prescription medication and for the monitoring of inmate-patients with serious medical conditions. Defendant Conmed responds that "[i]f Plaintiff's claim suggests that Conmed should have a policy to tell its health care providers every act which they are required to perform as part of patient care, no matter how basic or obvious such an act would be, then Conmed is essentially liable for any act/omission by an employee." However, this misconstrues the nature of Plaintiff's allegation. Plaintiff does not suggest that Conmed must establish an "official policy" that patients should receive their properly prescribed medications. Nor does Plaintiff suggest that Conmed "must have a policy, procedure, and/or training program to cover every possible act/omission on the part of its employees." Rather, Plaintiff contends that Conmed should have established a system

of checks and balances by which providers could be sure that inmate-patients receive prescribed medications and other recommended courses of treatment. Indeed, that even after Conmed staff members learned that Mr. Poole had not received his medications since arriving at the jail, not a single provider ever followed up to ensure that he began to receive his medications suggests a failure on Conmed's part of alarming proportions.

Taking the allegations in Plaintiff's Amended Complaint as true, as we must at this stage of the proceedings, the Court withholds ruling until the actual actions of the parties are developed. Therefore, the parties may proceed with discovery on this claim.

### 4. Plaintiff's Claims Against Defendant Stolle

Plaintiff's § 1983 claims against Defendant Stolle arise under a theory of supervisory liability. Therefore, as discussed *supra*, Plaintiff must prove that Defendant Stolle: (i) had knowledge that his subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury, (ii) that his response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices" and (iii) that there was an "affirmative causal link" between his inaction and the particular constitutional injury suffered by the Plaintiff. Shaw, 13 F.3d at 799.

Plaintiff argues that by virtue of Defendant Stolle's position as Sheriff, this Court should infer that he had knowledge of the previous deaths at the jail, the non-renewal of the CMS contract, and the FBI investigation. (Pl.'s Omnibus Reply 4-5.) Plaintiff further charges that, given the magnitude of the deficiencies and improper conduct by subordinates at the Virginia Beach Jail, it is reasonable to assume that this conduct "posed a pervasive and unreasonable risk of constitutional injury." (Id. at 5.) The Court may assume that, as the Sheriff of Virginia

Beach, Defendant Stolle knew or should have known of the history of mismanagement and sub-standard medical care provided at the Virginia Beach Jail under the services provided by CMS. The Court further presumes that the incidents described *supra* which occurred at the Virginia Beach Jail under CMS' care likely amounted to "a pervasive and unreasonable risk" of constitutional injury. However, Plaintiff has supplied no facts showing that any incidents had occurred since Conmed assumed its role at the Virginia Beach Jail. Thus, although the Court finds that Defendant Stolle may have had actual or constructive knowledge that CMS employees may have engaged in unreasonably risky conduct, we do not make such a finding as to the period after which Conmed assumed its role as the medical provider at the Jail.

The second prong of the test for supervisory liability requires that the supervisor's response be so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices." A plaintiff may establish this element by showing that a supervisory official failed to undertake an official policy or custom which caused a deprivation of a prisoner's constitutional rights. Brown v. Mitchell, 308 F. Supp. 2d 682, 692 (E.D.Va. 2004) (citing Monell v. Dep't of Soc. Svcs., 436 U.S. 658 (1978)). This official policy may be found in written regulations, in the affirmative decisions of policymaking officials, or in certain omissions by policymaking officials that manifest deliberate indifference to the rights of individuals. Outside of official policies, a custom may be found to exist "if a practice is so 'persistent and widespread' and 'so permanent and well settled' as to constitute a custom or usage with the force of law." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (internal citations omitted).

The Fourth Circuit has held that an official's inaction can constitute a custom or policy where the official fails to act in the face of documented widespread abuses or where he or she

fails to remedy a situation that, unaddressed, was patently likely to cause constitutional deprivations to inmates. <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 229-31 (4th Cir. 1984); <u>Shaw</u>, 13 F.3d at 799; <u>Slakan v. Porter</u>, 737 F.2d 368, 373 (4th Cir. 1984) ("A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates."). Plaintiff supports its contention that Defendant Stolle's conduct amounted to "continued inaction in the face of documented widespread abuses" with "the simple fact that he was aware of the history of inmate deaths and investigations by external organizations such as the FBI." (Pl.'s Omnibus Reply 5.) We agree that failure to act in the face of the documented abuses which occurred under CMS' care likely rises to the level of deliberate indifference. However, the facts show that Defendant Stolle *did* act in the face of these abuses. Indeed, it was presumably at Defendant Stolle's direction, or at least with his approval, that the Virginia Beach Sheriff's Office declined to renew its contract with CMS in September 2010, and instead contracted with Conmed.

Moreover, the Fourth Circuit has made clear that merely showing deliberate indifference by subordinate physicians is insufficient to give rise to supervisory liability on the part of prison officials. <u>Miltier</u>, 896 F.2d at 854. In this case, there is simply no evidence to support a finding that Defendant Stolle tacitly authorized his subordinate health care providers to employ "grossly incompetent medical procedure," or that, knowing that such care was being provided, Defendant Stolle deliberately turned a blind eye. <u>Id.</u> at 855 (citing <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1985) (failure of prison officials to respond to inmate's note alleging a threat by a fellow inmate did not constitute deliberate indifference so as to render supervisory personnel liable)). Certainly, that Conmed ultimately hired most of the physicians and nurses previously employed

by CMS, and that Defendant Stolle failed to ensure that these medical providers received additional training or to implement more stringent oversight of the care being provided at the Virginia Beach Jail may amount to negligence. But the Supreme Court has expressly and consistently repudiated a negligence standard for Eighth Amendment claims. Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991); see Estelle v. Gamble, 429 U.S. 97 (1976) (implementing the "deliberate indifference" standard rather than a negligence standard).

Plaintiff's final allegation against Defendant Stolle is that he failed to train jail employees to identify inmates with serious medical conditions and to take the appropriate action upon so identifying such prisoners. To prove liability under a "failure to train" theory, a plaintiff must demonstrate that (i) the subordinates actually violated the plaintiff's constitutional or statutory rights; (ii) the supervisor failed to properly train subordinates, thereby demonstrating deliberate indifference; and (iii) this failure to train actually caused subordinates to violate the plaintiff's rights. Brown, F.Supp.2d at 701-02.

Plaintiff has pleaded sufficient facts to show that jail employees may have violated plaintiff's constitutional rights. Indeed, that Mr. Poole had known serious medical issues, that he was never provided his blood pressure medication, that he was turned away after complaining of headaches, sudden blindness, and an inability to walk, and that his care was so direly neglected that he ultimately died from lack of treatment may be sufficient to satisfy the low threshold of Rule 8(a)(2) in proving that jail staff acted indifferently toward Mr. Poole's serious medical need. See Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (delay in medical care in the face of persisting systems amounts to deliberate indifference); Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985) (upholding denial of judgment n.o.v. where defendants ignored clear warnings

that medical care was needed and where they allowed the prisoner to deteriorate beyond recovery).

However, Plaintiff has failed to show that Defendant Stolle failed to adequately train his subordinates, or that such failure to train amounted to deliberate indifference. Indeed, the Fourth Circuit has expressly disclaimed supervisory liability on these facts. In <u>Miltier</u>, the Court stated:

> Even assuming that the physicians' failure to provide a cardiac exam was a "pervasive and unreasonable risk of harm from some specified source," <u>see</u> <u>Slakan</u>, 737 F.2d at 372, it would be an unprecedented extension of the theory of supervisory liability to charge these wardens, not only with ensuring that [the prisoner] receive prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures – procedures learned during several years of medical school, internships, and residencies. No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise.

<u>Miltier</u>, 896 F.2d at 854.

Moreover, Plaintiff cannot charge Defendant Stolle with the violations of inmates' constitutional rights that occurred under CMS' care. CMS was not the health care provider at the time of Mr. Poole's death. Defendant Stolle had no reason to know that Conmed staff members may have been providing grossly deficient care. Thus, Even if Plaintiff can show that more adequate training of jail staff might have produced a different outcome for Mr. Poole, she cannot prevail on her "failure to train" claim. For the reasons stated herein, Defendant Stolle's Motion to Dismiss is hereby **GRANTED**.

### 5. Plaintiff's Claims Against Defendants Harrell and Falletta

In her Amended Complaint, Plaintiff alleges that certain non-medical staff, including Defendants Harrell and Falletta, failed to fulfill their obligation to ensure that Mr. Poole received his medications and failed to respond to Mr. Poole's complaints. As previously discussed, non-

medical prison officials in this Circuit may be held individually liable under § 1983 only upon a showing that (i) they failed promptly to provide an inmate with needed medical care; (ii) they deliberately interfered with the prison doctor's performance; or (iii) they tacitly authorized or were deliberately indifferent to the prison physician's constitutional violations. Miltier, 896 F.2d at 854. Plaintiff's allegations against Defendants Harrell and Falletta center on the first such theory: that these defendants failed to provide Mr. Poole with prompt access to medical care.

Plaintiff's Amended Complaint alleges few facts relating to Defendants Harrell and Falletta. The sole allegation against these Defendants appears to be that, after relaying Mr. Poole's complaints and reporting their own observations to jail medical personnel, Defendants Harrell and Falletta took no further action to ensure that Mr. Poole received prompt medical treatment. However, the facts alleged in the Amended Complaint indicate that Defendants Harrell and Falletta did everything they were under a duty to do. Indeed, these Defendants delivered Mr. Poole to the infirmary on multiple occasions and, upon receiving Mr. Poole's complaints, they promptly contacted the jail medical staff. Moreover, Plaintiff concedes that it was only after being told by medical personnel that Mr. Poole had been "cleared" to remain on the cell block that Defendants Harrell and Falletta chose not to seek further care. (Pl.'s Am. Compl. ¶ 47.)

The law is settled in the Fourth Circuit that nonmedical prison personnel are entitled to rely on the advice and opinions of medical personnel with respect to a prisoner's treatment and care. See Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (citing Spruill v. Gills, 372 F.3d 218 (3d Cir. 2004). Thus,

> [i]f a prisoner is under the care of medical experts . . .,a nonmedical prison
> official will generally be justified in believing that the prisoner is in capable

> hands.  This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding non-medical prison officials liable in a case where a prisoner was under a physician's care would strain this division of labor.

Spruill, 372 F.3d at 236.  Certainly, nonmedical prison officials may be held liable under the applicable "deliberate indifference" standard if they knew or should have known that prison medical staff were mistreating or failing to treat an inmate, and nonetheless failed to act.  But, even reading the facts in the light most favorable to Plaintiff, as we are bound to do on a motion to dismiss, that simply did not occur here.

The facts show that Defendants Harrell and Falletta on multiple occasions either contacted jail medical personnel or transported Mr. Poole to the infirmary for treatment, and that their decision to keep Mr. Poole on the cell block despite his complaints was made in reliance on advice received from the medical staff.  Even if, as Plaintiff alleges, the prison guards' failure to demand more satisfactory treatment for Mr. Poole was the product of their belief that Mr. Poole was "malingering," the facts show that the guards derived this belief directly from the medical staff.  Therefore, any failure of Defendants Harrell or Falletta to ensure that Mr. Poole received prompt medical care was a result of their reliance on the opinions of medical experts.  Plaintiff has alleged no facts which show that such reliance was objectively unreasonable.  Therefore, the Motion to Dismiss filed by Defendants Harrell and Falletta is hereby **GRANTED**

## V.    CONCLUSION

Count II of Plaintiff's Amended Complaint rests on state law grounds.  This Court declines to accept jurisdiction over these claims and Count II of Plaintiff's Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE.**  For the reasons stated herein, Defendant

Haft's Motion to Dismiss Count One of Plaintiff's Amended Complaint is hereby **GRANTED**;

Defendants Stolle's Motion to Dismiss Count One of Plaintiff's Amended Complaint is hereby

**GRANTED**; the Motion to Dismiss Count One of Plaintiff's Amended Complaint filed by

Defendants Harrell and Falletta is hereby **GRANTED**; the Court **WITHHOLDS JUDGMENT**

on Defendant Conmed's Motion to Dismiss Count One of Plaintiff's Amended Complaint; and

the remaining Provider Defendants' Motion to Dismiss Count One of Plaintiff's Amended

Complaint is hereby **DENIED**.

   **IT IS SO ORDERED**.

                                                          /s/
                                              Robert G. Doumar
                                              Senior United States District Judge

Norfolk, Virginia
December 20, 2011