IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

FEB 2 3 2012

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

EVELYN SAWYER as Administratrix
of the ESTATE OF DOUGLAS POOLE,
    Plaintiff,

v.

                                                   CIVIL No. 2:11cv446

KENNETH STOLLE, et al.,
    Defendants.

## OPINION AND ORDER

This is a civil rights action to redress alleged violations of the Eighth and Fourteenth Amendments arising out of the death of Douglas Poole, which occurred while he was incarcerated at the Virginia Beach Jail in Virginia Beach, Virginia. Plaintiff Evelyn Sawyer, as Administratrix of the Estate of Douglas Poole ("Plaintiff") alleges that, while serving a ten day sentence in the Virginia Beach Jail for driving on a suspended license, her brother Douglas Poole was denied access to competent medical treatment, and that such wrongful denial caused his untimely death. (Pl.'s Compl. 2 ¶ 1.; Pl.'s Omnibus Reply 1.) In her Amended Complaint, Plaintiff lists as defendants Kenneth Stolle, the Sheriff of Virginia Beach ("Defendant Stolle"), Virginia Beach Jail medical services provider Conmed, Inc. ("Defendant Conmed"), Virginia Beach Jail medical staff members and supervisors Howard Haft, M.D., Tyrane Herriott, R.N., and Abdul Jamaludeen, M.D. (the "Provider Defendants"), Virginia Beach Jail nonmedical staff members Deputy Harrell, Deputy Falletta, Deputy Gunderson, and Corporal Jennings, and John and Jane Does associated with the Virginia Beach Sheriff's Office and Conmed, Inc..

On December 20, 2011, this Court entered an Order dismissing Plaintiff's claims as to Defendants Stolle, Haft, Harrell, and Falletta, and reserving judgment as to Plaintiff's

constitutional claims as to Defendants Conmed, Herriott, and Jamaludeen.[1] The Court also

dismissed in its entirety Count Two of Plaintiff's Complaint, which alleged violations of state

law. On February 3, 2012, on Plaintiff's motion, the Court entered a Dismissal Order as to

Plaintiff's claims against Defendant Herriott. This matter is presently before the Court on the

motion to dismiss filed by Defendant Gunderson on January 27, 2012. The Court notes that,

although Plaintiff had ample opportunity to file a response brief to Defendant Gunderson's

motion to dismiss, Plaintiff filed no such response. The Court determines that, given Plaintiff's

silence, there is no reason to delay its ruling on this matter. For the reasons set forth below, the

Court **GRANTS** Defendant Gunderson's motion to dismiss.

## I.    FACTUAL AND PROCEDURAL HISTORY[2]

The Virginia Beach Jail in Virginia Beach, Virginia, is a 1,100-inmate jail that contracts

with for-profit institutions to provide medical care to its inmate population. For twenty-five

years, the Virginia Beach Jail contracted with Correctional Medical Services ("CMS") to provide

medical services to its inmate population. However, in September 2010, after CMS came under

scrutiny in Virginia for failing to provide care consistent with accepted medical standards to

inmates in correctional facilities in Virginia Beach and elsewhere in Virginia, the Virginia Beach

Jail declined to renew its contract with CMS.[3] (Pl.'s Am. Compl. ¶¶ 19, 21-25, 27.) On October

---

[1] At the time of the Court's prior dismissal Order, entered December 20, 2011, Plaintiff had not yet perfected service on Defendant Gunderson. Defendant Gunderson was served on January 10, 2012, which explains why his motion to dismiss follows now.

[2] The facts recited here are drawn from the allegations set forth in Plaintiff's First Amended Complaint. The facts are assumed true only for the purpose of deciding the motions currently before the Court. The facts recited here are not factual findings for any purpose other than for the consideration of the instant motions.

[3] In her Amended Complaint, Plaintiff alleges the following. In 1994, the Norfolk Virginia City Jail (a neighboring detention facility) terminated its contract with CMS for CMS' failure to contain the threat of infectious diseases including, but not limited to, tuberculosis. In the summer of 2000, the state of Virginia assessed more than $900,000.00 in penalties against CMS for incidents ranging from failure to provide inmates with timely referrals to physicians failing to assess medical conditions within forty-eight hours of inmates entering the prison. In July 2001, the Virginia Beach Jail changed its contract terms with CMS from a yearly agreement to a conditional month-to-

1, 2010, Defendant Conmed took over inmate medical services at the Virginia Beach Jail. The Court notes, however, that Conmed hired all or most of the physicians and nurses that CMS had previously employed at the Virginia Beach Jail. (Id. at ¶ 28.)

According to the allegations recited in Plaintiff's Amended Complaint, Douglas Poole was committed to the Virginia Beach Jail on October 29, 2010, to serve a ten day sentence for driving under a suspended license. Upon his initial presentation, he reported to the jail infirmary and was evaluated by Dr. Jamaludeen, the sole attending physician at the Virginia Beach Jail. Mr. Poole informed the medical staff, including Dr. Jamaludeen, that he suffered from diabetes and hypertension and that he required certain prescription medications. It was noted in the jail medical chart that Mr. Poole was to receive Insulin for his diabetes and Lisinopril to control his hypertension, and that his blood pressure was to be monitored for the first three days he was in custody. Mr. Poole was cleared by Conmed medical staff for participation in the "Self Medication Program," and was thus permitted to keep his medications on his person. Plaintiff alleges that, despite the medications order in Mr. Poole's chart, and despite having been granted permission to keep his medications on his person, Mr. Poole was not dispensed his prescribed medications. Plaintiff further alleges that no member of Conmed's staff ever followed up to ensure that Mr. Poole's blood pressure was being appropriately monitored or that Mr. Poole had received and/or taken his medications. (Id. at ¶¶ 32-34.)

On October 29, 2010, neither the medical staff nor the jail staff dispensed Lisinopril to Mr. Poole. On October 30, the staff again failed to dispense Lisinopril to Mr. Poole. On that

---

month arrangement following a high profile incident in which a female inmate died in her cell from liver cancer, Hepatitis C, and cirrhosis, which had caused her to retain eighty pounds of excess water in her abdomen. The Virginia Beach Sheriff's Offices, the Federal Bureau of Investigations, and Amnesty International launched an investigation into this incident. Nonetheless, the Virginia Beach Jail renewed its contract with CMS in the summer of 2002, and continued to contract with CMS until September 2010. (Pl.'s Am. Compl. ¶¶ 21-25, 27.)

day, his blood pressure was recorded in the jail medical chart as 162/102. On October 31, the staff again failed to dispense Lisinopril to Mr. Poole, and his blood pressure was listed on his chart as being 154/96. (Id. at ¶¶ 35-37.) On November 1, 2010, Mr. Poole complained to the Dr. Jamaludeen that he had not received Lisinopril or Insulin from the jail staff, at which time Dr. Jamaludeen again prescribed both medications to Mr. Poole. His blood pressure was recorded at 168/105. (Id. at ¶ 38.) Thereafter, Mr. Poole received Insulin, but did not receive Lisinopril.

On the afternoon of November 3, 2010, Mr. Poole presented to the Jail infirmary in distress and reported to Dr. Jamaludeen and other medical personnel that he was experiencing severe eye pain. He was dispensed Tylenol and returned to his cell. None of his vital signs were checked during this visit to the infirmary. (Id. at ¶ 44.) Later that afternoon, Mr. Poole returned to the infirmary again complaining of severe eye pain. He was again dispensed Tylenol and returned to his cell without any monitoring of his vital signs. (Id. at ¶ 45.) Upon returning to his cell block, Mr. Poole became unsteady on his feet and began to perspire heavily. He reported to the prison guards on staff that he could not see. Defendant Gunderson reportedly had to help Mr. Poole sit on his bed in his cell. The guards contacted the medical staff, but after being informed that Mr. Poole should remain in his cell, they took no further action. (Id. at ¶ 47.)

Shortly thereafter, Mr. Poole collapsed in his cell and struck his head on a table. (Id. at ¶ 48.) After other inmates got the attention of the prison guards, the guards transported him to the infirmary by wheelchair. (Id.) Upon Mr. Poole's arrival at the infirmary, a member of the medical staff instructed that he was to be returned to the cell block. None of his vital signs were monitored. (Id. at ¶ 49.) On his return to the cell block, Mr. Poole repeatedly informed the guards that he could not see or walk. (Id. at ¶ 50.) The guards and prison staff apparently believed that Mr. Poole was malingering and took no further action to address his complaints.

(Id.) Less than thirty minutes later, Mr. Poole indicated to his cell mates that he felt nauseated, and his cell mates observed his eyes to be very red. At this time, Mr. Poole became unconscious and remained so for fifteen minutes. (Id. at 54.)

Mr. Poole was again transported to the infirmary, where he was vomiting and appeared drowsy and lethargic. Following a reading of his blood pressure at 197/90, jail personnel immediately called 911. (Id. at 17.) At approximately 4:45 p.m., Mr. Poole was transported to the Emergency Room. Upon his arrival at the hospital, Mr. Poole was observed to be disoriented and distressed, and his blood pressure was measured at 236/68. A brain scan revealed the presences of a massive hemorrhage in the right posterior cerebral hemisphere. (Id. at ¶¶ 56-58.) Mr. Poole's condition continued to deteriorate, and on November 4, 2010, he was declared to be clinically brain dead. (Id. at ¶ 60.) On November 8, 2010, an autopsy revealed that Mr. Poole died of a brain hemorrhage, which was the result of uncontrolled hypertension. (Id. at ¶ 61.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although a plaintiff need not plead "detailed factual allegations," she must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to allow such an inference. Id.

Where a plaintiff fails to state a claim upon which relief can be granted, or otherwise fails to meet the requirements of Rule 8(a)(2), Federal Rule of Civil Procedure 12(b)(6) permits a

party to move the court to dismiss an action. The function of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. <u>Neitzke v. Williams</u>, 409 U.S. 319, 326-27 (1989). Where, as here, a Rule 12(b)(6) motion tests the sufficiency of a civil rights complaint, the court must be "especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts as alleged.*" <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999) (internal citations omitted) (emphasis in original). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts a plaintiff's factual allegations as true, but is "not bound to accept as true legal conclusions couched as allegations." <u>Iqbal</u>, 129 S. Ct. at 1950 (citing <u>Bell Atlantic</u>, 550 U.S. at 555).

### III. ANALYSIS

The Fourth Circuit has held that non-medical prison officials may be held individually liable under § 1983 only upon a showing that (i) they failed promptly to provide an inmate with needed medical care; (ii) they deliberately interfered with the prison doctor's performance; or (iii) they tacitly authorized or were deliberately indifferent to the prison physician's constitutional violations. <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990). Plaintiff's allegations against Defendant Gunderson center on the first such theory: that Defendant failed to provide Mr. Poole with prompt access to medical care.

In this Court's prior Order, we held that any failure of Defendants Harrell or Falletta, the other prison guards named in Plaintiff's Complaint, to ensure that Mr. Poole received prompt and

adequate medical care was a result of their reasonable reliance on the opinions of medical experts. Specifically, we found as follows:

> The sole allegation against these Defendants appears to be that, after relaying Mr. Poole's complaints and reporting their own observations to jail medical personnel, Defendants Harrell and Falletta took no further action to ensure that Mr. Poole received prompt medical treatment. However, the facts alleged in the Amended Complaint indicate that Defendants Harrell and Falletta did everything they were under a duty to do. Indeed, these Defendants delivered Mr. Poole to the infirmary on multiple occasions and, upon receiving Mr. Poole's complaints, they promptly contacted the jail medical staff. Moreover, Plaintiff concedes that it was only after being told by medical personnel that Mr. Poole had been "cleared" to remain on the cell block that Defendants Harrell and Falletta chose not to seek further care.

Plaintiff's allegations against Defendant Gunderson are similar to those asserted against Defendants Harrell and Falletta. Plaintiff contends that Defendant Gunderson escorted Mr. Poole back to his cell block after Mr. Poole had visited the infirmary, that Mr. Poole told Defendant Gunderson that he could not see, that Mr. Poole was having trouble walking, and that Defendant Gunderson had to physically sit Mr. Poole down on his bed in his cell. (Pl.'s Am. Compl. ¶ 50.) Plaintiff further alleges that the guards who accompanied Mr. Poole back to his cell, including Defendant Gunderson, falsely concluded that Mr. Poole was malingering and left him in his cell despite his complaints about serious physical symptoms. (Pl.'s Am. Compl. ¶ 50.)

Just as we found in our previous Order dismissing Plaintiff's Complaint with respect to the allegations against Defendants Harrell and Falletta, the Court finds that Defendant Gunderson reasonably relied on the advice of medical personnel in his treatment of Mr. Poole. When Defendant Gunderson is alleged to have been deliberately indifferent to Mr. Poole's well-being, he had just brought Mr. Poole back from the infirmary, where medical personnel had dismissed Mr. Poole's symptoms and instructed the guards to return him to his cell. Plaintiff's Complaint provides no fact which supports a finding that Defendant Gunderson failed of his own

accord to provide Mr. Poole with needed medical care, that he deliberately interfered with the prison doctor's provision of care, or that he was deliberately indifferent to the physician's constitutional violations. Miltier, 896 F.2d at 854. On the contrary, the Complaint alleges that the prison guards, including Defendant Gunderson, several times escorted Mr. Poole to and from the infirmary in response to his complaints.

Unless specifically instructed otherwise by medical personnel, nonmedical jail personnel are not required to provide care which goes beyond ensuring access to treatment by qualified professionals, nor are they qualified to do so. See Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008) (citing Spruill v. Gills, 372 F.3d 218 (3d Cir. 2004) (non-medical prison personnel are entitled to rely on advice and opinions of medical personnel with respect to prisoner treatment). Moreover, although nonmedical jail staff may be held liable under the "deliberate indifference" standard if they knew or should have known that prison medical staff were mistreating or failing to treat an inmate, and nonetheless failed to act, the Complaint does not support such a finding as to Defendant Gunderson. Therefore, Defendant Gunderson's motion to dismiss is hereby **GRANTED**.

The Clerk is **DIRECTED** to deliver a copy of this Order to all counsel of record.

It is so **ORDERED**.

Norfolk, Virginia

February 23, 2012

/s/
Robert G. Doumar
Senior United States District Judge